UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN SIERRA, and similarly situated individuals, <br><br>                          Plaintiff, <br><br>         vs. <br><br> RENUE SYSTEMS OF NY-NJ, LLC, and JUSTIN CHODOS, individually, <br><br>      Defendants. | Dkt. No.: 1:20-cv-00399-KPF |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND REQUEST FOR PROFESSIONAL FEES AND COSTS**

**JAFFE GLENN LAW GROUP, P.A.**
Andrew Glenn, Esq.
Jodi Jaffe, Esq.
300 Carnegie Center, Suite 150
Princeton, New Jersey 08540
Tel: (201) 687-9977
*Class Counsel*

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .................................................................................... iv

INTRODUCTION .................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...............................................2

   1.  Nature of Plaintiffs' Claims ...........................................................2

   2.  Motion Practice, Discovery and Settlement Negotiations .....................3

SUMMARY OF THE SETTLEMENT .................................................................5

   1.  Definition of Settlement Class ........................................................5

   2.  Payment to Class Members .............................................................5

   3.  Expenses of Settlement Administration..............................................7

   4.  Service Awards ............................................................................7

   5.  Attorneys' Fees and Expenses .........................................................7

   6.  Claims Administration and Notices ...................................................7

   7.  Release of Defendants...................................................................9

ARGUMENT  ...................................................................................................9

   1.  THE SETTLEMENT SHOULD BE APPROVED BY THE COURT.......................10

      a.  The Settlement Is Procedurally Fair          10

      b.  The Settlement Is Fair, Reasonable and Adequate      12

   2.  CONDITIONAL CERTIFICATION OF RULE 23 SETTLEMENT CLASS IS APPROPRIATE      16

   3.  CLASS COUNSEL'S ATTORNEY FEES ARE REASONABLE      17

      a.  The Percentage Method is Favored in Common Fund Class Action Settlements.......17

         i. Class Counsel's Time and Labor...................................................18

         ii. Magnitude and Complexity of the Litigation.....................................19

         iii. Risk of Litigation..................................................................20

iv.  Quality of Representation…………………………………………………………20

v.  The Requested Fee in Relation to the Settlement……………………………..21

vi.  Public Policy Considerations…………………………………………………...22

b.  Class Counsel's Rates Are Reasonable ………………………………………………...23

c.  The Lodestar Cross Check Further Supports an Award to Class Counsel of Twenty-Four Percent of the Settlement Fund,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,24

d.  Class Counsel Is Entitled to Reimbursement of Costs……………………………………26

4.  THE CLASS REPRESENTATIVES ARE ENTITLED TO A MODEST INCENTIVE AWARD FOR REPRESENTING THE CLASS ..............................................................27

CONCLUSION……………………………………………………………………………………..27

TABLE OF AUTHORITIES

<u>CASES</u>                                                                                                                          <u>PAGE</u>

*A.H. Phillips v. Walling*,
324 U.S. 490 (1945)..........................................................................................................23

*Acevedo v. Workfit Med. LLC*,
187 F.Supp.3d 370, 380 (W.D.N.Y. 2016)………………………………………………13

*Allende v. Unitech Design, Inc.*,
783 F. Supp. 2d 509 (S.D.N.Y. 2011)…………………………………………………24

*Alleyne v. Time Moving & Storage Inc.*,
264 F.R.D 41 (E.D.N.Y. 2010)………………………………………………...,,,,,,,,,22

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)………………………………………………………………….10

*Barrentine v. Arkansas-Best Freight Systems, Inc.*,
450 U.S. 728 (1981)........................................................................................................19

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013)………………………………………………………10

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)………………………………………………………………….18

*Brack v. MTA New York City Transit*,
No. 18-CV-846-SJB, 2019 WL 1547258, at *5 (E.D.N.Y.  Apr. 9, 2019)……………………..9

*Cagan v. Anchor Sav. Bank FSB*,
Case No. 88-CV-3024, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 22, 1990).......................14

*Capsolas v. Pasta Resources Inc.*,
 No. 10 Civ. 5595, 2012 WL 4760910, at *7 (S.D.N.Y. Oct.5, 2012)…………………………..21

*Castagna v. Madison Square Garden, L.P.*,
2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011).............................................................26

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)…………………………………………………………12, 13, 14, 16, 20

*Cohan v. Columbia Sussex Mgmt., LLC*,
2018 U.S. Dist. LEXIS 170192……………………………………………………..*20, 22, 23,25*

*Cty. of Suffolk v. Long Island Lighting Co.*,
710 F. Supp. 1422, 1424 (E.D.N.Y. 1989), *aff'd in part, rev'd in part on other grounds*,
 907 F.2d 1295 (2d Cir. 1990)……………………………………………………………………..16

*Febus v. Guardian First Funding Group, LLC*
870 F. Supp. 2d 337 (S.D.N.Y. 2012)……………………………………………………10, 19, 20

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)...........................................................................................14, 16

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)…………………………………………………………12, 18, 23, 25

*Gomez v. Lace Entm't Inc. et al.*,
No. 15 Civ 3326, 2017 WL 129130, at *7 (S.D.N.Y. Jan. 6, 2017)……………………………..18

*Gortat v. Capala Bros., Inc.*,
257 F.R.D. 353, 361 (E.D.N.Y. 2009)……………………………………………………………17

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003)……………………………………………………9

*Hall v. ProSource Technologies, LLC*,
14-CV-2502, 2016 U.S. Dist. LEXIS 53791, 2016 WL 1555128
 (E.D.N.Y. Apr. 11, 2016)……………………………………………………………........ 22

*Hart v. RCI Hosp. Holdings, Inc.*,
No. 09 Civ 3043, 2015 U.S. Dist. LEXIS 126934 (S.D.N.Y. Sept. 22, 2015)………………18, 25

*Hernandez v. Merrill Lynch & Co., Inc.*,
11 Civ. 8472, 2012 U.S. Dist. LEXIS 165771, 2012 WL 5862749 (SDNY Nov. 15, 2012)……10

*Hicks v. Morgan Stanley & Co.*,
No. 01-CV-10071, 2005 U.S. Dist. LEXIS 24890, (SDNY Oct. 24, 2005)........................25

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)………………………………………………………...14

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013)………………………………………………………26

*In re Gilat Satellite Networks, Ltd.*,
Case No. 02-cv-1510, 2007 U.S. Dist. LEXIS 68964 (E.D.N.Y Sept. 18, 2007)……………21

*In re Global Crossing Securities & ERISA Litigation*,
225 F.R.D. 436 (S.D.N.Y. 2004)………………………………………………………..25

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12CV-8557, 2014 U.S. Dist. LEXIS 177175 (SDNY Dec. 19, 2014)…………..………..25

*In re Independent Energy Holdings PLC Securities Litigation*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)................................................................26

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998)………………………………………………………..10

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)..............................................................23

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003)………………………………………………..25

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000).......................................................................16

*Johnson v. Brennan*,
2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. 2011)…………………………………20, 21, 23, 25, 27

*Lizondro-Garcia v. Kefi LLC*,
2014 U.S. Dist. LEXIS 143165 (S.D.N.Y. 2014)......................................................10

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007)………………………………………………………22

*McBean v. City of New York*,
228 F.R.D. 487, 502 (S.D.N.Y. 2005)………………………………………………21

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009)...........................................................................10

*Miltland Raleigh-Durham v. Myers*,
840 F. Supp. 235 (S.D.N.Y. 1993)..................................................................................26

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)...........................................................................................14

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .........................................................................................14

*Pajaczek v. Cema Constr. Corp.*
2008 NY Slip Op 50386U (Sup. Ct. N.Y. Co. 2008) .....................................................19

*Raniere v. Citigroup Inc.*
310 F.R.D. 211 (S.D.N.Y. 2015)………………………………………………….................18, 27

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26, 31 (E.D.N.Y. 2006)…………………………………………………………17

*Rodpracha v. Pongsri Thai Rest. Corp.*,
No. 14CV02451 (DF), 2020 WL 9423920, at *2 (S.D.N.Y. Aug. 18, 2020)………………….....9

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*,
58 F. Supp. 3d 424 (S.D.N.Y. 2014)………………………………………………………24

*Sewell v. Bovis Lend Lease, Inc.*,
2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124 (S.D.N.Y. April 16, 2012)…………………..27

*Sterbenz v. Brack*,
No. 19-1304, 2019 WL 3526374 (2d Cir. July 16, 2019)…………………………………………9

*Taft v. Ackermans*,
Index No. 02-cv-7951(PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)…………....………..20

*Tiro v. Pub. House Invs., LLC*,
No. 11-CV-7679, 2013 U.S. Dist. LEXIS 129258, (SDNY Sept. 10,2013)………………………13

*Velez v. Novartis Pharms. Corp.*,
2010 WL 4877852, at *6 (S.D.N.Y. Nov. 30, 2010)……………………………………………..13

*Viafara v. MCIZ Corp.*,
Case No. 12-CV-7452 (RLE), 2014 U.S. Dist. LEXIS 60695 (S.D.N.Y. May 1, 2014)...............24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. ("Visa")*,
396 F.3d 96 (2d Cir. 2005)…………………………………………………………………10, 18

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ...................................................................................22

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910)……………………………………………………………………10

*Williams v. MGM-Pathe Commc'ns Co.*,
129 F.3d 1026 (9th Cir. 1997) ……………………………………………………………22

*Willix v. Healthfirst, Inc.*,2
2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. 2011)........................................................23

STATUTES

29 U.S.C. §§ 207..........................................................................................1, 2

29 U.S.C. §§ 216(b)……………………………………………………1, 2, 9, 17, 19, 26

Fed. R. Civ. P. 23…………………………………………………………........9, 19

Fed. R. Civ. P. 23(e)……………………………………………………………10

Fed. R. Civ. P. 23(e)(2)........................................................................10

New York Labor Law § 190 *et. seq*........................................................1, 2

New York Labor Law § 663……………………………………………1, 2, 17, 26

New York Labor Law § 650 *et. seq*........................................................1, 2

OTHER AUTHORITIES

12 New York Codes, Rules, and Regulations § 146 *et seq*……………………………......1

Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage Law Enforcement
in the  Federal Courts, 29 Berkeley J. Emp. & Lab. L. 269, 291–94……………………………13

# INTRODUCTION

In connection with Plaintiffs' Unopposed Motion for Final Approval of the Class Action Settlement ("Motion for Final Approval") in the above-captioned action, Jaffe Glenn Law Group, P.A., as Class Counsel, makes this application for an Order seeking a) final approval of the settlement of this action; b) an award of attorneys' fees and costs in the amount of $41,162.25 for legal services performed in prosecuting and resolving the claims in this action; and c) approval of service awards of $5,000.00 for both the Named Plaintiff Martin Sierra and Opt-In Plaintiff Tyrone Batts. A copy of the Proposed Final Order is annexed to the February 3, 2022, Declaration of Andrew I. Glenn ("Glenn Decl.") as Exhibit "A". A copy of the Declaration of Barry J. Peek, Esq. of Arden Claims Service ("Peek Decl.") is also annexed hereto as Exhibit "B".

This action was brought pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 207 and 216(b); New York Labor Law § 190 *et. seq*., New York Labor Law §663 and 650 *et. seq*.; and 12 New York Codes, Rules, and Regulations § 146 *et seq.*, to recover unpaid overtime compensation and straight time compensation owed to Named Plaintiff Martin Sierra, Opt-In Plaintiff Tyrone Batts (hereinafter collectively referred to as the "Named Plaintiffs"), and all similarly situated persons who are presently or were formerly employed by Renue Systems of NY-NJ, LLC, and Justin Chodos, individually (collectively the "Defendants" or "Renue").

During the more than two years spent litigating this class and collective action, Class Counsel Jaffe Glenn Law Group, P.A,. has spent more than 147 attorney hours prosecuting this case. [Glenn Decl. ¶ 15.] These hours don't include the time spent during the Notice period as well as the time spent preparing the instant application for final approval and the administration of the settlement to its conclusion. Class Counsel's efforts to date have been without compensation, and

their entitlement to be paid has been wholly contingent upon achieving a good result. For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees are fair and reasonable under the applicable legal standards, and, in light of the contingency risk undertaken and the result achieved, should be awarded.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.  Nature of Plaintiffs' Claims

Defendants employed more than one hundred and twenty-three (123) commercial cleaners to provide deep cleaning and disinfecting services to Defendants' hospitality industry and other commercial clients. In the instant litigation, Plaintiffs allege working varying hours, including significant overtime hours, and were paid for some but not all of their regular time and overtime hours worked (*See generally*, DE 1, Complaint).

This action was brought pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 207 and 216(b); New York Labor Law § 190 *et seq*., New York LaborLaw §663 at 650 *et seq*.; 12 New York Codes, Rules, and Regulations § 146-1.4 and 146-1.6, to recover unpaid straight time compensation and unpaid overtime compensation owed to the Named Plaintiff, the opt-in Plaintiff Batts, and all similarly situated persons who arepresently or were formerly employed by Renue Systems of NY-NJ, LLC (hereinafter referred to as "Corporate Defendant" or "Renue"), and Justin Chodos, individually (hereinafter collectively referred to as "Defendants") throughout New York and New Jersey.

Specifically, Plaintiffs allege that during their employment, they routinely worked between 38 and 60 hours per work week but were not paid for all hours worked. Rather, Defendants allegedly manipulated their hours so as to avoid paying them all their wages due. In the Complaint, Sierra defines these allegedly similarly situated employees as all

"non-exempt commercial cleaners – who worked in furtherance of Defendants' business, on or after December 11, 2013 (six years before the filing of the Complaint in this matter)". (Comp.¶1, [DE1]).

Defendants vehemently deny Sierra's allegations and contend that Sierra, and all employees, were properly compensated at all times for all hours worked. Defendants further contend that they operated in good faith at all times and committed no violation - and certainly no willful violation - of the FLSA, the New York Labor Law or any wage and hour law.

### 2. Motion Practice, Discovery and Settlement Negotiations

This action was initially commenced on December 11, 2019 in the Supreme Court of the State of New York, New York County. On January 15, 2020, Defendants filed a Notice of Removal [NYSCEF Doc.5, DE1] and the matter was transferred to the United States District Court, Southern District of New York, and assigned a Docket No.1:20-cv-00399. After Plaintiff Martin Sierra filed his complaint, a second commercial cleaner of Defendants, Tyrone Batts, joined this action [DE10]. On January 21, 2020, in lieu of ordering a scheduling conference, this Honorable Court issued a Mediation Referral Order [DE2]. On February 13, 2020, Defendants filed a letter seeking a pre-motion to dismiss conference [DE7], which the Court held in abeyance pending mediation [DE8].

An initial court-ordered mediation conference was scheduled to occur on April 21, 2020, to attempt settlement of the claims on an individual basis. However, prior to the mediation going forward, the parties instead agreed to attempt resolution of the claims on a class basis. As such, the scheduled mediation was postponed until June 30, 2020, so that Defendants could provide necessary discovery for counsel of Plaintiffs to analyze, which

was necessary to attempt settlement. Defendants in fact provided Plaintiffs' counsel with over 4000 pages of documents, which included the number of putative class members who worked for Defendants, (for about three quarters of the putative class members) the number of weeks worked within the statute of limitations periods, their hourly rate(s) of pay, and the hours documented as worked by Defendants. Plaintiffs' counsel used that data to formulate a demand on behalf of the entire putative class, which required the creation and manipulation of spreadsheets to address uncertainties within the documents provided.

The parties were unable to resolve the matter at the initial mediation, but continued their settlement discussions for several months thereafter, and at times with the assistance of the mediator. Finally, on or about March 16, 2021, counsel for the Parties on behalf of the putative class, reached a resolution of Plaintiffs' claims. On October 26, 2021, the Court granted Plaintiffs' motion for preliminary approval of the settlement, finding that the settlement appeared to be fair and reasonable to all involved, suffered from no obvious defects, was reached after arms-length negotiations between the parties, and appeared to constitute a reasonable compromise of the claims and defenses in this matter. [DE 62].

The final terms of the settlement of Plaintiffs' class and collective action claims under the FLSA and NYLL are set forth in the Settlement Agreement previously submitted to the Court in connection with Plaintiffs' Motion for Preliminary Approval. [DE 56-1].

The discovery, analysis, and settlement negotiations allowed the Plaintiffs to evaluate the merits of their claims. The settlement was the product of fully informed parties negotiating at arm's length, and provides a fair and reasonable resolution of the litigation, especially given the risks faced by each party at trial and in potential appeals.

## SUMMARY OF THE SETTLEMENT

1.  **Definition of Settlement Class**

In order to effectively obtain resolution of Plaintiffs' claims, the Settlement encompassed both claims arising under the FLSA, in the form of a collective action resolution, and claims arising under the NYLL, in the form of a Rule 23 class action resolution. To finalize the Settlement, Plaintiffs and Defendant seek final approval/certification of the following Settlement Class:

> all non-exempt commercial cleaners who were employed by Renue during the applicable period from December 11, 2013 to the Present.

2.  **The Payment to Class Members:**

The Agreement requires Defendants to pay a total not to exceed $175,000 into a Gross Settlement Fund from which Settlement Awards will be paid to the Plaintiffs and Class Members following the deduction of the following amounts:

> 1.  $41,162.25 in attorneys' fees and costs to Plaintiffs' counsel;
>
> 2.  $5,000 in a service award to Sierra;
>
> 3.  $5,000 in a service award to Batts; and
>
> 4.  $10,000 in costs incurred by the Settlement Claims Administrator.

If the Court approves these amounts, there would be a net settlement fund of $113,837.75 for distribution to the Plaintiffs and Class Members. The Settlement Payment to Plaintiffs and Class Members includes their alleged unpaid wages, unpaid overtime wages, and liquidated damages. Renue shall be responsible for paying the employer's share of all Federal, State, and/or local payroll taxes, in addition to the Gross Fund. Any money remaining in the Net Settlement Fund not claimed by Class Members shall revert to Renue.

With respect to the calculation of settlement payments to Plaintiffs and Class Members,

each Plaintiff and Class Member is entitled to receive a payment based on their rate of pay, the number of weeks he worked for Renue, and the number of hours worked each week; these calculations were arrived at using documents produced by Defendants. Each "Class Member" that worked for Renue between December 11, 2013, and the present shall be allotted an additional three (3) hours per week for each week he or she worked at their weighted regular hourly wage rate, if the addition of the three hours brings the number of hours worked to 40 or less ("Regular Weeks"). If the addition of the three (3) hours brings the number of hours worked above forty (40), the "Class Member," shall be paid at their overtime rate of pay, mainly time and one half of their weighted regular rate of pay ("Overtime Weeks"). For the years where the paystubs only show biweekly hours, the hours will be split equally for each week. To the extent that the number of hours in a week is a fraction, the number of hours shall be rounded up. The method delineated above shall be similarly applied to determine whether the hours are paid at a regular rate or overtime rate.

The number of Overtime Weeks for each Class Member shall be multiplied by three (hours) to get the Total Unpaid Overtime Hours. The Total Overtime Hours is then multiplied by a Class Member's weighted overtime rate of pay, which shall be the Overtime Amount.

The number of Regular Weeks for each Class Member shall be multiplied by three (hours) to get the Total Unpaid Regular Hours. The Total Unpaid Regular Hours is then multiplied by a Class Member's weighted regular rate of pay, which shall be the Regular Amount.

The Overtime Amount shall be added to the Regular Amount to equal total allotted wages per Class Member ("Individual Class Member Allotted Wage").

The Individual Class Member Allotted Wage shall be divided by the sum total of each Class Member's Individual Class Member Allotted Wage, which equals the Class Member's percentage share of the Net Settlement Fund ("Individual Percentage Share of Net Settlement

Fund").

The Individual Percentage Share of the Net Settlement Fund is then multiplied by $113,837.75 (the Net Settlement Fund amount), which shall equal the settlement check issued to each Class Member ("Class Member's Individual Settlement Payment").

**3. The Expenses of Settlement Administration**

Arden Claims Services will administer the allocation and distribution of the settlement payments to Plaintiffs and the Class Members. The costs for serving as settlement administrator, equaled $10,000, which shall be paid to Arden Claims Services out of the Gross Settlement Fund.

**4. Service Awards**

In addition to his payments for allegedly unpaid wages, unpaid overtime and liquidated damages, plaintiff Sierra will receive an additional payment in the amount of $5,000.00 in recognition of the services he has rendered on behalf of the Class Members. Similarly, opt-in plaintiff Batts will receive a service payment in the amount of $5,000.00, in addition to his allegedly unpaid wages, overtime and liquidated damages. These Service Awards are intended to compensate Sierra and Batts for the services they performed for the class and collective action, the time they spent assisting with the litigation, and the risks they assumed in connection with this litigation.

**5. Attorneys' Fees and Expenses**

Plaintiffs' Counsel seeks an award of attorneys' fees and expenses of $41,162.25, which is 24% of the Gross Settlement Fund.

**6. Claims Administration and Notice**

Pursuant to the Preliminary Approval Order, each member of the Settlement Class was sent, by first-class U.S. mail a Notice in the form approved by the Court, along with an individualized Opt-In Form (also in the form approved by the Court), and individualized Opt-Out Form

7

(collectively, the "Notice Packet."). Peek Decl. at ¶4. The Notice Packet advised Class Members of their right to participate in the Settlement, as well as their right to opt-out from or object to the Settlement and the implications of each such action. *Id.* The Notice Packet advised Class Members of applicable deadlines and other events including the date and location of the Fairness Hearing, and how Class Members could obtain additional information. *Id.*

On November 10, 2021, the Notice Packet was mailed via First Class Mail to 123 Class Members contained in the Class List for whom addresses were available. Peek Decl. at ¶7. A postage pre-paid, pre-addressed return envelope was included with each Notice Packet. *Id.* On December 10, 2021, reminder postcards were mailed via First Class Mail to the ninety-nine (99) Class members who had not yet returned an opt-in form. Peek Decl. at ¶8. Ultimately, the number of Class Members who received Notice Packets was 119 out of the final class list of 123. Peek Decl. at ¶10. Four (4) class members were not ultimately located for a total undeliverable rate of approximately 3%. *Id.*

Between the mailing of the Notice Packets and the close of the claim-submission period on January 9, 2022, in total, the claims administrator received forty-two (42) valid Opt-In Forms, with all of those participating Class Members to receive their portion of the Net Settlement Amount. Peek Decl. at ¶ 11. There was also one late submission that was accepted by Plaintiffs and Defendants, for a total of forty-three (43) valid Opt-In Forms. All forty-three (43) participating Class Members will receive their portion of the Net Settlement Amount, representing approximately 35% of the Settlement Class. *Id.*

Therefore, there are forty-two (42) Class Members who submitted timely claims and one (1) Class Member who submitted a late claim that was deemed acceptable, and thus a total of forty-three (43) participating Class Members are eligible to receive payment. Accordingly, Arden will proceed to mail checks to the forty-three (43) participating Class Members who will collectively be

paid their proportionate amount of the Net Settlement Fund, which will be $53,443.49. Approximately 47% of the Net Settlement Fund will be distributed to the Class Members. Peek Decl. at ¶14.

There were also no opt-outs or other requests for exclusion. Peek Decl. at ¶12. There were also no objections to the settlement. Peek Decl. at ¶13.

### 7.  Release of Defendants

Defendants will receive a release consistent with the claims and allegations made in this case with no admission or liability. The Settlement Agreement provides that every Class Member who submits an opt-in-form and receives a settlement payment shall release any and all claims and potential claims and damages against Defendants under local, state and federal wage and hour laws, including the FLSA, NYLL, New Jersey Wage Payment Law and Connecticut Wage and Hour law for any and all wage and hour violations arising between December 11, 2013, and the present. [1]

In addition, Class Members who do not timely opt out of the settlement will release Defendants from state and local wage and hour law claims under the NYLL, New Jersey Wage Payment Law and Connecticut Wage and Hour law ("Released Claims"). [2]

### ARGUMENT

---

[1] The release of claims in the parties' revised settlement agreement is consistent with applicable law. Indeed, an individual must opt into a collective for his or her FLSA claims to be resolved via the mechanism of the collective, and an individual who chooses not to opt in cannot then be held to have released his or her FLSA claims by a collective settlement. *See*, 29 U.S.C. § 216(b); *see*, *Brack v. MTA New York City Transit*, No. 18-CV-846-SJB, 2019 WL 1547258, at *5 (E.D.N.Y.  Apr. 9, 2019) (in settling FLSA claims, "[individuals who] do not wish to be bound by the settlement - because they object to the scope of the release, the amount of the settlement compensation, or for any reason at all - [] need only chose not to opt in. If they do not opt in, they are not bound in any way by the [] settlement"), appeal withdrawn sub nom; *Sterbenz v. Brack*, No. 19-1304, 2019 WL 3526374 (2d Cir. July 16, 2019). Here, only those class members who opt-in to the hybrid class/collective action will be deemed to have waived their FLSA claims.

[2] Where the parties have crafted a claims made settlement under Rule 23 and a class member takes no action with respect to the parties' settlement, a class member may be held to have released his or her NYLL or other state law claim. *Rodpracha v. Pongsri Thai Rest. Corp.*, No. 14CV02451 (DF), 2020 WL 9423920, at *2 (S.D.N.Y. Aug. 18, 2020); *See*, *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003) ("Unlike a class action lawsuit brought pursuant to Federal Rule of Civil Procedure 23, in an FLSA collective action, only potential plaintiffs who opt in can be bound by the judgment." (internal quotations and citation omitted).

## 1.   THE SETTLEMENT SHOULD BE APPROVED BY THE COURT

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Rule 23(e) requires approval to ensure that the settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). There is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* ("*Visa*"), 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts."). In the Second Circuit, courts examine both procedural and substantive fairness with the understanding that the law favors compromise and settlement of class actions. *Visa*, 396 F.3d at 116-19. Settlement eliminates the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. *See id.*

### a.   .The Settlement is Procedurally Fair

"In assessing procedural fairness, there is 'a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Lizondro-Garcia v. Kefi LLC,* 2014 U.S. Dist. LEXIS 143165, *9-11 (S.D.N.Y. 2014) (Pitman, D.J.) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (brackets in original), quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, supra, 396 F.3d at 116). Further, "'courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.'" *Id.* quoting *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 47 (S.D.N.Y. 2013) (Ellis,D.J.), citing *Hernandez v. Merrill Lynch & Co., Inc.*, 11 Civ. 8472 (KBF)(DCF), 2012 U.S. Dist. LEXIS 165771, 2012 WL 5862749 at *2 (S.D.N.Y. Nov. 15, 2012) (Freeman, M.J.)).

Fairness is evaluated by examining "the settlement's terms and the negotiating process leading to settlement." *Visa*, 396 F.3d at 116. In reviewing procedural fairness, the court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's- length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quotation omitted). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116.

Here, the parties engaged in a true arm's-length negotiation to reach this settlement – specifically, an initial mediation for over ten (10) hours, and several months of post mediation negotiations, with, at times, participation of the mediator.  The Defendants provided Plaintiffs' counsel with over four thousand (4000) pages of time sheets and payroll records, which allowed them to generate an extensive, manipulable damages spreadsheet, as well as evaluate the strengths and weaknesses of Plaintiffs' claims. The Defendants also provided voluminous documents related to their personal and corporate finances, so that Plaintiffs could conduct a thorough analysis of the Defendants' financial  solvency, and their ability to withstand greater judgment, which helped Plaintiffs evaluate the risks of proceeding to trial. As a result of this process, the parties were ultimately able to reach a final agreement which was preliminary approved by Your Honor on October 26, 2021 [DE 62]. Such negotiations raise a presumption that the settlement satisfies the requirements of due process. *Visa*, 396 F.3d at 116- 17 (settlement presumptively procedurally fair where "a consensual resolution was achieved based on full information and honest negotiation between well-represented and evenly balanced parties"); *D'Amato*, 236 F.3d at 85-86 (settlement procedurally fair where it was based on arm's length negotiations by experienced counsel).

A Notice of Proposed Settlement ("Notice"), a Consent to Join and Opt-In Form ("Consent

to Join"), and a Request for Exclusion from Class Form ("Opt-Out") was sent to all class members in accordance with this Court's Preliminary Approval Order [DE 62] [Glenn Decl. at ¶3]. At that time, this Court was also presented with the parties' settlement agreement [DE 57-1]. Currently, a final fairness and approval hearing is scheduled for February 22, 2022, at 10:00 a.m. The settlement has provided ample opportunity for class members to participate and recover and, as further evidenced by the fact that the settlement was reached with the assistance of a mediator, is not a product of collusion.

### b. The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*").

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. With the exception of factor (2), at the time of preliminary approval of the instant settlement, all of the *Grinnell* factors weighed in favor of approval of the Settlement Agreement. These factors were fully briefed by the parties in their Memorandum in Support of Joint Motion for Preliminary Approval of the Settlement (hereinafter "Preliminary Approval Motion"), which was filed with the Court on October 4, 2021[DE 59, pgs. 16-24].

With respect to *Grinnell* Factor 2, the reaction of the class to the Settlement, it cannot be disputed that it has been positive. Aside from the two Plaintiffs that have fully participated in the litigation, of the 123 notices that were sent out to the putative class, no individuals have opted out of this settlement. Glenn Decl.¶6. "Where relatively few class members opt-out of or object to the settlement, the lack of opposition supports court approval of the settlement." *Tiro v. Pub. House Invs., LLC*, No. 11 Civ. 7679 (CM), 2013 U.S. Dist. LEXIS 129258, 2013 WL 4830949, at *7 (S.D.N.Y. Sept. 10, 2013).

Further, of the 123 notices sent, 43 individuals have opted to participate in the settlement, which is an opt-in rate of approximately 35%. This is not indicative of opposition to the terms of the Settlement Agreement and is well above the rate approved in other cases and the typical rate in FLSA and NYLL cases. *See, e.g., Acevedo v. Workfit Med. LLC*, 187 F.Supp.3d 370, 380 (W.D.N.Y. 2016) (approving settlement with 21% claim rate); See also *Velez v. Novartis Pharms. Corp.,* 2010 WL 4877852, at *6 (S.D.N.Y. Nov. 30, 2010) (approving 7% rate). *See also* Andrew C. Brunsden, Hybrid Class Actions, Dual Certification and Wage Law Enforcement in the Federal Courts, 29 Berkeley J. Emp. & Lab. L. 269, 291–94 (2008) (surveying 21 opt-in FLSA cases and finding average participation rate to be 15.71%). This response demonstrates that the members of the Settlement Class approve the terms of the Settlement, including the results achieved on their behalf, and support final judicial approval.

Multiple steps were taken by the claims administrator to ensure that as many class members as possible received notice of the class action settlement. Peek Decl. ¶¶ 4-9. Of all notices mailed, 16 were returned to the claims administrator without forwarding addresses. Peek Decl. ¶ 9. The claims administrator performed an advanced address search using LexisNexis, a reputable research tool, on each returned notice, which resulted in all of the Notices to re-mailed notices. Of the 16 re-mailed notices, only 1 was returned a second time. Peek Decl. ¶ 9.

13

Accordingly, this factor favors approval.

Post notification to the class, additional facts weigh in favor of approval *Grinnell* factor 8, that is, Whether the Settlement Fund is Substantial, Even in Light of the Best Possible Recovery. As stated in the Preliminary Approval Motion, the determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164,178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well- settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, Case No. 88-CV-3024, 1990 U.S. Dist. LEXIS 11450, *34-35 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Defendants have agreed to settle this case for a substantial amount, not to exceed $175,000.00, inclusive of attorneys' fees and costs; $113,837.75 was available to the putative class after attorneys' fees and costs and administrative costs. This provides much more than "a fraction of the potential recovery." Plaintiffs calculated their total underpayment for the entire relevant period at approximately $841,048.00.

With respect to the calculation of settlement payments to Plaintiffs and Class Members,

14

each Plaintiff and Class Member is entitled to receive a payment based on their rate of pay, the number of weeks he worked for Renue, and the number of hours worked each week, using Renue's pay records for the calculation. Each "Class Member" that worked for Renue between December 11, 2013, and the present shall be allotted an additional three (3) hours per week for each week he or she worked at their weighted regular hourly wage rate, if the addition of the three hours brings the number of hours worked to 40 or less ("Regular Weeks"). If the addition of the three (3) hours brings the number of hours worked above forty (40), the "Class Member," shall be paid at their overtime rate of pay, mainly time and one half of their weighted regular rate of pay ("Overtime Weeks"). For the years where the paystubs only show biweekly hours, the hours will be split equally for each week. To the extent that the number of hours in a week is a fraction, the number of hours shall be rounded up. The method delineated above shall be similarly applied to determine whether the hours are paid at a regular rate or overtime rate.

The number of Overtime Weeks for each Class Member shall be multiplied by three (hours) to get the Total Unpaid Overtime Hours. The Total Overtime Hours is then multiplied by a Class Member's weighted overtime rate of pay, which shall be the Overtime Amount.

The number of Regular Weeks for each Class Member shall be multiplied by three (hours) to get the Total Unpaid Regular Hours. The Total Unpaid Regular Hours is then multiplied by a Class Member's weighted regular rate of pay, which shall be the Regular Amount.

The Overtime Amount shall be added to the Regular Amount to equal total allotted wages per Class Member ("Individual Class Member Allotted Wage").

The Individual Class Member Allotted Wage shall be divided by the sum total of each Class Member's Individual Class Member Allotted Wage, which equals the Class Member's percentage share of the Net Settlement Fund ("Individual Percentage Share of Net Settlement Fund"). Using this formula, 47% of the Net Settlement Fund is being paid to participating Class

Members, which shows the settlement is fair and reasonable.

The *Grinnell* factors weigh in favor of issuing approval of the settlement. In the event that a substantial number of objectors come forward at the fairness hearing with meritorious objections, the Court can reevaluate its determination. However, as of the filing of the instant Motion, no person has opted out of the settlement and no person has objected. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

## 2.   CONDITIONAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE

The Parties respectfully request that, pursuant to the Settlement Agreement, the Court conditionally certify the following Rule 23 Classes for settlement purposes:

> all non-exempt commercial cleaners who were employed by Renue during the applicable Class Period (from December 11, 2013 to the Present) and who timely submit a claim form opting-in to the Rule 23 class (the "Class Members") [3]

The proposed Class meets all of the requirements for class certification for settlement purposes. In *Cty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990) the Second Circuit recognized the appropriateness of parties to a class action negotiating a proposed settlement of the action prior to certification of the class.

Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.

Under Rule 23, a class action may be maintained if all of the requirements of Rule 23(a) are

---

[3]    The Class Members are referred to collectively below as the "Plaintiffs."

met, as well as one of the requirements of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "In the Second Circuit, 'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility'" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006). Moreover, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009). These requirements were fully briefed by the parties in the Preliminary Approval Motion [DE 59 at pgs. 25-30].

### 3.    CLASS COUNSEL'S ATTORNEY FEES ARE REASONABLE

The settlement agreement contemplates an award of attorneys' fees and costs to Class Counsel in the amount of $41,162.25, which represents 23.5% of the Gross Settlement Fund.

### a.    The Percentage Method is Favored in Common Fund Class Action Settlements

The FLSA provides for an award of "reasonable attorney's fees to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The New York Labor Law has a similar provision. NYLL § 663.  In wage and hour class action lawsuits, where a common fund is established, public policy favors an award of attorneys' fees based as a percentage of the common fund. Indeed, "[i]t is blacetter law that 'a litigant or a lawyer who recovers a common fund for the benefit of persons

17

other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.' *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The Second Circuit has authorizeddistrict courts to employ a percentage-of-the-fund method when awarding fees in common fund cases." *Hart v. RCI Hosp. Holdings, Inc.*, 2015 U.S. Dist. LEXIS 126934 at *37 (citing *Goldberger*, 209 F.3d at 47).

To determine whether a fee is reasonable, courts look to the factors identified by the Second Circuit in *Goldberger*.  See also *Raniere*, 310 F.R.D at 220 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,396 F.3d at 121. These factors include: 1) the time and labor expended by counsel, 2) the magnitude and complexities of the litigation, 3) the risk of the litigation, 4) the quality of the representation, 5) the requested fee in relation to the settlement, and 6) public policy considerations. *Id*. All of the aforementioned factors weigh heavily in favor of Class Counsel's fee application.

### i.  Class Counsel's Time and Labor

Class Counsel expended significant effort, and took considerable risk, achieving the settlement in this action. While this case did not go to trial, it was a complex wage and hour class action lasting over two years.

Class Counsel initially interviewed Plaintiff Sierra and Opt-In Plaintiff Batts, thereafter drafting a Class and Collective Action Complaint for Damages. Counsel received and analyzed over four thousand pages of time and payroll records provided by Defendants, generating an extensive, manipulable damages spreadsheet as well as evaluating the strengths and weaknesses of their claims therefrom. Counsel attended an initial mediation for over ten (10) hours and thereafter several months of post mediation negotiations to achieve a favorable settlement for the Plaintiffs and the putative class. Further, the parties drafted the Settlement Agreement; successfully filed a motion for preliminary approval of class action settlement; and facilitated and

18

regularly reviewed the claims procedures for the putative class, which included mailing notice of the proposed class action and settlement, consent to join form, and opt-out form to class members, performing skip traces when notices were returned as undeliverable and re-mailing to new addresses, keeping accurate records of the dates notice and claim forms were mailed, returned, and re-mailed, keeping accurate records of all communications with class members, keeping accurate records of all claim forms, opt-out statements and/or objections, keeping accurate records of an incomplete or illegible claim forms and making attempts to cure such errors, responding to inquiries from class members, retaining all claim forms, opt-out statements, and objections.

In total, Class Counsel performed more than 148.70 hours prosecuting this case through settlement. This figure does not include much of the time Class Counsel has devoted to this fee application, or the time that will be devoted to the final administration of the settlement process. These hours are reasonable for a case like this one that was heavily litigated for over two years.

### ii. Magnitude and Complexity of the Litigation

This case involved over one hundred and twenty class members and extensive legal issues and complex factual issues. Courts have recognized that wage and hour cases involve complex legal issues: "FLSA claims typically involve complex mixed questions of fact and law, these statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 743 (1981).

Further, "courts have recognized that FLSA cases are complex and that '[a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b).'" *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (finding this factor weighed in favor of

approval despite the fact that "this case is not on the scale of complexity of many class actions")

(quoting *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, *17 (S.D.N.Y. 2011)).

### iii.  Risk of Litigation

Class Counsel undertook this action on a contingent basis, without any guarantee that it

would be compensated for its labor and costs. There were also uncertainties as to whether Plaintiffs

would ultimately be able to collect a judgment. *See Febus*, 870 F. Supp. 2d at 340. "'Uncertainty

that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of

an award.'" *Cohan v. Columbia Sussex Mgmt., LLC*, 2018 U.S. Dist. LEXIS 170192, *10 (quoting

*Johnson*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17). "[D]espite the most rigorous

and competent of efforts, success is never guaranteed." *Grinnell,* 495 F.2d at 471.

Accordingly, the risk of litigation and collection weigh in favor of Class Counsel's request

for attorneys' fees.

### iv.  Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the

recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*,

Index No. 02-cv-7951(PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (*citing In re*

*Global Crossing Securities & ERISA Litigation*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).

Class Counsel has extensive experience prosecuting wage and hour class and collective

actions. Proposed Class Counsel are experienced litigators who have successfully represented

thousands of workers in class and collective wage and hour employment lawsuits. Some examples

include: Bulba v. Tunstall Holdings, LLC, et.al., 14-00746 (E.D.N.Y., May 26,2015);

Scales v. We R Wireless, Inc., et.al., 14-cv-03322 (D.N.J., November 2, 2016); Cirillo v.

Patriot Electric Corp., 15-cv-03770 (E.D.N.Y., May 17, 2016); Hebert, et.al. v. Atlantic County,

13-cv-04170 (D.N.J., December 7, 2015); <u>Cabrera v. Penn-Del Baking Distributors, Inc.</u>, et.al., 13-cv-4805 (D.N.J., May 26, 2015); <u>Rodriguez v. Parade Management, LLC, et al.</u>, 19-cv-223 (D.N.J., December 7, 2020); <u>Siyam v. SS&C</u>, 3:19-cv-18535 (N.J. September 20, 2021). Counsel is currently litigating several other potential and existing class/collective wage and hour lawsuits.

### v. The Requested Fee in Relation to the Settlement

"Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a 'windfall.'" *Johnson*, 2011 U.S. Dist. LEXIS 105755 at *18 (citing *In re Gilat Satellite Networks, Ltd.*, Case No. 02-cv-1510, 2007 U.S. Dist. LEXIS 68964, *16, n. 41 (E.D.N.Y Sept. 18, 2007).

Here, Defendants have agreed to pay Plaintiffs' counsel Forty Thousand Dollars ($40,000.00) in attorneys' fees representing less than twenty-three percent (23%) of the total settlement amount. Additionally, Plaintiffs' counsel will receive One Thousand One Hundred Sixty-Two and 25/100 Dollars ($1,162.25) in costs. The work that Plaintiffs' Counsel have performed in litigating and settling this case demonstrates their commitment to the Class Members and representing their interests. Plaintiffs' counsel has committed substantial resources to prosecute this case. The work that Plaintiffs' counsel has performed, including investigating the claims and defenses, preparing pleadings, reviewing over 4,000 pages of documents, calculating damages, negotiating the settlement terms and preparing settlement documents, was significant and contributed to the successful resolution of the claims of not only Plaintiffs, but the entire class of affected current and former employees. *See Capsolas v. Pasta Resources Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *7 (S.D.N.Y. Oct.5, 2012), (approving requested fee where "[t]he work that Class Counsel ... performed in litigating and settling th[e] case demonstrate[ d] their commitment to the class and to representing the class's interests"). Since the inception of this action, Jaffe Glenn Law Group, P.A., has spent 148.70

hoursprosecuting this case, for a total of $62,810.00 in attorneys' fees incurred, exclusive of all time spent with respect to the drafting of the settlement papers submitted to this Court[4].

"While not determinative of the reasonableness of the fee request, this reduction reflects Class Counsels' good faith." *Cohan*, 2018 U.S. Dist. LEXIS 170192 at 12 (approving Virginia & Ambinder's request for fees in the amountof 30% of the Qualified Settlement Fund) (citing *Hall v. ProSource Technologies, LLC*, 14-CV- 2502, 2016 U.S. Dist. LEXIS 53791, 2016 WL 1555128, at *16 (E.D.N.Y. Apr. 11, 2016).

Further, the fact that not all class members elected to participate in this settlement should not affect Class Counsel's fee application. Where, in a class-action settlement, a fund is created to pay for all potential claims, and the total claim amounts come in at an amount less than the fund amount, the "entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).

Class Counsel obtained this settlement to the potential benefit of all class members, and the "value of legal advice rendered but not heeded is undiminished by tis rejection. Nor is the value of legal service rendered in the create of a settlement fund diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D 41, 59 (E.D.N.Y. 2010). Class Counsel is thus entitled to their reasonable 23.5% fee.

### vi. Public Policy Considerations

---

[4] This amount has changed, as counsel for Plaintiffs miscalculated the attorneys' fees.

Public policy considerations also weigh in favor of granting Class Counsel's requested fees. The Fair Labor Standards Act and state wage and hour laws are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work").

"District courts and the Second Circuit 'have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation.'" *Cohan,* 2018 U.S. Dist. LEXIS 170192 at *13 (quoting In *re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). "Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes." *Johnson*, 2011 U.S. Dist. LEXIS 105775 at *56 (citing *Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, *6 (E.D.N.Y. 2011).

Where relatively small claims can only be prosecuted through aggregate litigation, as in this case, attorneys must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Goldberger*, 209 F.3d at 51 (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring…cases that serve the public interest").

### b. Class Counsel's Rates Are Reasonable

The rates charged by Jaffe Glenn Law Group, P.A. are reasonable and within the accepted rates for attorneys of commensurate skill in the wage and hour class action field within this district. Counsel for Plaintiff, Jodi J. Jaffe, Esq., has regularly been awarded fees at the rate of $400.00 per hour. Counsel is a licensed attorney in Florida, New Jersey and New York, and currently practices law in Federal and State courts in these jurisdictions. Counsel has litigated

innumerable cases to verdict while working for the Dade County Public Defenders' Office from 1990 to 1993; the Legal Aid Society, in New York, New York, from 1993 to 2000; and thereafter in private practice as a managing shareholder of a statewide law firm in Florida from 2000 to 2010. In early 2011, counsel incorporated the Jaffe Glenn Law Group, where she is a 50% shareholder. Counsel's firm is small, comprised of two attorneys; the fee in the claim was a contingent one. Since its inception, counsel prosecutes almost exclusively claims which arise under the FLSA and associated state laws.

Counsel for Plaintiff, Andrew I. Glenn, Esq., has regularly been awarded fees at the hourly rate of $450.00. Counsel Andrew Glenn, Esq., is a licensed attorney in New Jersey and currently practices law in Federal and State courts in these jurisdictions. Counsel was a trial attorney with the New Jersey Attorney General's Office from 1992 until 1998. Thereafter, counsel Glenn continued civil litigation in private practice for several years. Prior to incorporating the instant law firm, counsel Glenn prosecuted exclusively wage and hour claims in Federal Court beginning in 2007. In early 2012, counsel joined the Jaffe Glenn Law Group, P.A., Counsel Glenn continues to prosecute almost exclusively claims which arise under the FLSA and associated state laws, for the last decade. *See, e.g., Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514-515 (S.D.N.Y. 2011) (finding reasonable, in an FLSA/NYLL case that $450 per hour rate for a partner with ten years' experience and a $275 per hour rate for an associate who graduated with four years' experience was reasonable); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases*."); Viafara v. MCIZ Corp.*, Case No. 12-CV-7452 (RLE), 2014 U.S. Dist. LEXIS 60695 (S.D.N.Y. May 1, 2014) (approving hourly rate of $125 for paralegal).

    **c.  The Lodestar Cross Check Further Supports an Award to Class Counsel of**

**Twenty-Four Percent of the Settlement Fund.**

When using the percentage method, courts loosely use the lodestar method as a "baseline" or as a "cross check" to further ensure that the attorney fees are reasonable. *See Johnson*, 2011 U.S. Dist. LEXIS 105775 at *57-58 (citing *Goldberger*, 209 F.3d at 50). When cross checking the attorney fees under the lodestar method, courts are not required to scrutinize the fee records as rigorously. *See e.g. Goldberger*, 209 F.3d at 50*; In re Global Crossing Securities & ERISA Litigation*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004).

To determine a lodestar, Courts multiply the hours reasonably expended on the case by a reasonable hourly rate. *See Cohan*, 2018 U.S. Dist. LEXIS 170192, at *15 (quoting *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *20 (citing *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005)). Courts then consider whether a multiplier is warranted based on several factors, "such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *See Johnson*, 2011 U.S. Dist. LEXIS 105775 at *58. Courts regularly award lodestar multipliers from two to six times lodestar. *Id*. (listing cases).

Here, Class Counsel's multiplier is less than 1 (0.637). Class Counsel's attorney fees under the lodestar method are approximately $62,810.00. Class Counsel's proposed fees ($40,000.00) represent 23% of the Gross Settlement Fund ($175,000.00). Thus, the requested multiplier is less than 1 (40,000.00/62,810.00 = 0.637). This is *well below* the lodestar multipliers that are regularly awarded in this Circuit. *See Hart*, 2015 U.S. Dist. LEXIS 126934 at *38-39 ("It is not at all uncommon for fees to be awarded that reflect multiples of plaintiffs' counsel's lodestar.") (citing *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557 (CM), 2014 U.S. Dist. LEXIS 177175, 2014 WL 7323417, at *18 (S.D.N.Y. Dec. 19, 2014) (multiplier of 1.41); *In re*

25

*VisaCheck/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (multiplier of 3.5); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d. 369, 401 (S.D.N.Y. 2013) (multiplier of 2.8)).

Class Counsel spent more than 148.70 hours litigating and settling this matter. The time spent by Class Counsel is described in the accompanying Declaration of Andrew Glenn, Esq. and allwork can be seen in the Redacted Time and Expense Report previously filed [DE 59-4], which are Class Counsel's contemporaneous time records. As such, the cross check under the lodestar method further supports that Class Counsel's request for attorney fees is reasonable.

### d.  Class Counsel is Entitled To Reimbursement of Costs

Class Counsel further requests costs in the amount of $1,162.25.00. The FLSA and NYLL provide for an award of "costs of the action." 29 U.S.C. § 216(b); NYLL § 663. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In Re Independent Energy Holdings PLC Securities Litigation*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (*citing Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)). Here, Class Counsel's unreimbursed expenses consisted mainly of costs for court filings, service, Pro Hac Vice, and copy costs, are costs associated with this settlement. Such costs were necessary to the representation of the Class.

### 4.  THE CLASS REPRESENTATIVES ARE ENTITLED TO A MODEST INCENTIVE AWARD FOR REPRESENTING THE CLASS

"[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218 *23- 24

(S.D.N.Y. June 7, 2011). The Settlement Agreement calls for a very modest service award of $5,000.00 to the Named Plaintiff, as well as $5,000.00 to Plaintiff Tyrone Batts.  Courts in this Circuit have approved service awards for much more than $5,000 in similar cases. *See Sewell v. Bovis Lend Lease,Inc.*, 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *14-15 (S.D.N.Y.  April  16, 2012) (granting service awards of $15,000 and $10,000 to class representatives in wage and hourclass action settlement, and listing supporting cases); *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS105775, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (granting service awards of $10,000to class representatives in wage and hour settlement).

Indeed, service awards are particularly warranted in the context of employment cases, because "[i]t takes courage for any employee to challenge her employer's workplace practices . . ." *Raniere*, 310 F.R.D at 220. No class members have objected to the service awards. As such, Plaintiffs' request for modest service awards is reasonable.

## CONCLUSION

For the reasons set forth above, Class Counsel respectfully requests that this Court (1) approve the settlement agreement, (2) grant Class Counsel's Request for an award of attorneys' fees and cost in the amount of $41,162.25, which would be inclusive of all costs, (3) provide foran incentive award to each of the plaintiffs listed above in the amount of $5,000.00, and (4) provide such other relief as the Court sees fit.

Dated: New York, New York
          February 3, 2022

**JAFFE GLENN LAW GROUP, P.A.**

/s/ Andrew Glenn
Andrew Glenn, Esq.

27